UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

CAMP 1382 LLC d/b/a CAMPAGNOLA
RESTAURANT, on behalf of itself and all
others similarly situated,

                              Plaintiff

                                            Case 1:20-cv-03336-RA

vs.

LANCER INSURANCE COMPANY,

                         Defendant.

_____

# MEMORANDUM OF LAW IN
# SUPPORT OF DEFENDANT'S MOTION TO DISMISS

HURWITZ & FINE, P.C.
Dan D. Kohane, Esq.
Steven E. Peiper, Esq.
Lee S. Siegel, Esq.
*Attorneys for Defendant,*
*Lancer Insurance Company*
1300 Liberty Building
Buffalo, New York 14202
(716) 849-8900

# TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................................ ii

Preliminary Statement....................................................................................................1

Statement of Facts.........................................................................................................3

Standard of Review........................................................................................................7

Argument ......................................................................................................................8

     I.      The Complaint Fails to Allege Covered Property Damage ....................................9

     II.     Civil Authority Coverage Does Not Apply
             Because the Complaint Does Not Allege
             Prohibited Access to the Plaintiff's Premises or
             a Covered Cause of Loss to Nearby Property........................................................16

     III.    The Virus Exclusion Precludes Coverage..............................................................20

     IV.    The Ordinance Or Law Exclusion Also Precludes Coverage ...............................23

     V.     Leave to Amend Should Be Denied As Futile........................................................24

Conclusion ..................................................................................................................25

# TABLE OF AUTHORITIES

Page

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................7

*Bethlehem Steel Co. v. Turner Constr. Co.*,
2 N.Y.2d 456, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957)..........................................22

*Chase Manhattan Bank, N.A. v. Keystone Distributors Inc.*,
873 F.Supp. 808 (S.D.N.Y. 1994) .............................................................................22

*Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*,
636 F.3d 683 (5th Cir. 2011)) .............................................................................13, 18

*Diesel Barbershop, LLC v. State Farm Lloyds*,
Case No. 5:20-CV-461-DAE, 2020 WL 4724305
(W.D. Tex. Aug. 13, 2020) ...............................................................................11, 22

*Dougherty v. North Hempstead Bd. of Zoning Appeals*,
282 F.3d 83 (2d Cir. 2002).......................................................................................24

*Finn v. Barney*,
471 Fed.Appx. 30 (2nd Cir. 2012) ............................................................................8

*Franklin EWC, Inc. et al. v. The Hartford Financial Services Group, Inc.*,
et al., Case No. 3:20-cv-04434-JSC, 2020 WL 5642483
(N.D. Cal. Sept. 22, 2020) ................................................................................10, 19

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*,
2020 WL 4561979,
 Case No. 20-258-CB-C30 (Mich. Circuit Ct. July 1, 2020) .......................................10

*Goldstein v. Pataki*,
516 F.3d 50 (2nd Cir. 2008).......................................................................................7

*Ira Stier, DDS, P.C. v. Merchants Ins. Group*,
127 A.D.3d 922, 7 N.Y.S.3d 365 (2nd Dept. 2015) ...................................................23

*Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP
v. Chubb Corp.*, No. CIV.A. 09-6057, 2010 WL 4026375, at *3
(E.D. La. Oct. 12, 2010)............................................................................................18

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
440 F.Supp.3d 520 (D.S.C. 2020) ................................................................. 13

*Hanover Ins. Co. v. Weirfield Coal, Inc.*,
--- F.Supp.3d ----, 2020 WL 4261195, at *3
(E.D.N.Y. July 24, 2020) .............................................................................. 8

*Health–Chem Corp. v. Baker*,
915 F.2d 805 (2d Cir.1990) .......................................................................... 24

*Lucente v. International Business Machines Corp.*,
310 F.3d 243 (2nd Cir. 2002) ...................................................................... 24

*Malaube, LLC v. Greenwich Ins. Co.*,
Case No. 1:20-cv-22615, 2020 WL 5051581
(S.D. Fla. Aug. 26, 2020) ............................................................................. 11

*Martinez, DMD, P.A. v. Allied Insurance Company of America*,
Case No. 2:20-cv-00401-FtM-66NPM, 2020 WL 5240218
(M.D. Fla. Sept. 2, 2020) ............................................................................. 22

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
Case No. 20-CV-03213-JST, 2020 WL 5525171, at *5
(N.D. Cal. Sept. 14, 2020) ........................................................................... 11

*National Cas. Co. v. Vigilant Ins. Co.*,
466 F.Supp.2d 533 (S.D.N.Y. 2006) ............................................................. 8

*Nettis v. Levitt*,
241 F.3d 186 (2d Cir. 2001) ........................................................................ 24

*Newman Myers Kreines Gross Harris, P.C. v.*
*Great Northern Insurance Co.*, 17 F.Supp.3d 323 (S.D.N.Y. 2014) .............. 13 *passim*

*Pahuta v. Massey-Ferguson, Inc.*,
170 F.3d 125 (2d Cir. 1999) ........................................................................ 13

*Paradies Shops, Inc. v. Sentinel Ins. Co.*,
No. 1:03-cv-3154-JEC, 2004 WL 5704715, at *1-2, *6
(N.D. Ga. Dec. 15, 2004) ........................................................................ 18-19

*Philadelphia Parking Authority v. Federal Ins. Co.*,
385 F.Supp.2d 280 (S.D.N.Y. 2005) ............................................................. 14

*Rose's 1 LLC v. Erie Ins. Exchange*,
Case No. 2020 CA 002424 B (D.C. Super. Aug. 6, 2020) ............................. 11

*Roundabout Theatre Co. v. Contin. Cas. Co.*,
302 A.D.2d 1, 751 N.Y.S.2d 4 (1st Dept. 2002).................................................................. 12 *passim*

*Ruffolo v. Oppenheimer & Co.*,
987 F.2d 129 (2d Cir.1993)........................................................................................24

*S. Hospitality, Inc. v. Zurich Am. Ins. Co.*,
393 F.3d 1137 (10th Cir. 2004) ................................................................................17

*S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*,
No. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008)...........................19

*Sandy Point Dental, PC v. The Cincinnati Ins. Co.*,
2020 WL 5630465, Case No. 20-cv-2160-RWG
(N.D. Ill. Sept. 21, 2020) .........................................................................................15

*Scheuer v. Rhodes*,
416 U.S. 232 (1974)...................................................................................................7

*Schlamm Stone & Dolan, LLP. v. Seneca Ins. Co.*,
6 Misc.3d 1037(A), 800 N.Y.S.2d 356 (Table) (N.Y. Sup. 2005)..................................23

*Seiden Assoc., Inc. v. ANC Holdings, Inc.*,
959 F.2d 425 (2d Cir.1992)........................................................................................22

*Social Life Magazine, Inc. v. Sentinel Ins. Co.*,
Case No. 1:20-cv-03311-VEC (S.D.N.Y. May 14, 2020) ................................. 14 *passim*

*St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*,
No. 2:97-cv-153 BB, 1999 WL 33537191, at *3
(N.D. Miss. Nov. 4, 1999) .........................................................................................17

*Stinnett v. Delta Air Lines, Inc.*,
 278 F.Supp.3d 599 (E.D.N.Y. 2017) .........................................................................7

*Syufy Enters. v. Home Ins. Co. of Ind.*,
No. 94-0756 FMS, 1995 WL 129229, at *2
(N.D. Cal. Mar. 21, 1995)..........................................................................................17

*Taylor v. Vt. Dep't of Educ.*,
313 F.3d 768 (2d Cir. 2002).......................................................................................7

*10E, LLC v. Travelers Indemnity Co. of Connecticut et al.*,
Case No. 2:20-cv-04418, 2020 WL 5359653
(C.D. Ca. Sept. 2, 2020)......................................................................................11, 22

*Turek Enterprises, Inc. v. State Farm*,
Case No. 1:20-cv-11655, 2020 WL 5258484
(E.D. Mich. Sept. 3, 2020) ................................................................................................11

*United Airlines, Inc. v. Ins. Co. of State of Pa.*,
385 F.Supp.2d 343 (S.D.N.Y. 2005),
*aff'd* 439 F.3d 128 (2d Cir. 2006) ...................................................................................13

*Williams v. Time Warner, Inc.*, 440 F. App'x 7 (2d Cir. 2011) ......................................7

<u>Statutes</u>

Fed.R Civ.P. 12(b)(6)................................................................................................1, 24

Fed.R.Civ.P. 15(a) ...........................................................................................................24

Fed.R.Evid. 201(b)...........................................................................................................20

Fed.R.Evid. 201(b)(2) ........................................................................................................8

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of LANCER INSURANCE COMPANY'S ("Lancer"), motion to dismiss this insurance coverage action filed by CAMP 1382 LLC d/b/a CAMPAGNOLA RESTAURANT, on behalf of itself and all others similarly situated ("Plaintiff"), pursuant to Fed. R. Civ. P. 12(b)(6) for a failure to state a cause of action.

The COVID-19 crisis has dominated the American public health, political, business, and legal landscape since at least March 2020. The reach of the pandemic is so extensive that it is hard to imagine that any business has not been impacted, albeit some positively, but the vast majority negatively. As of September 7, 2020, there were at least 850 lawsuits brought by policyholders against insurers seeking business income coverage for COVID-19[1] and an untold number of insurance claims. But no matter how extensive the reach and no matter how sympathetic the affected businesses, insurers like Lancer cannot be obligated to pay for risks they never undertook, for which no premium was collected, and that are excluded by clear and unambiguous policy provisions.

The Plaintiff's Complaint, an example of creative pleading, attempts to solve two glaring problems in its search for business interruption coverage arising from the COVID-19 pandemic: the lack of direct physical damage to property and the Lancer Policy's Virus Exclusion. These pleading hurdles are too high to overcome. The Lancer Policy insures against loss caused by direct physical property damage, not purely economic loss as a result of governmental orders aimed at stemming the public health impact of a raging pandemic. Moreover, even if the Complaint contained allegations of covered loss (which it does not), the Lancer Policy excludes loss resulting

---

[1] *See COVID-19 Business Interruption Complaint Survey* (last visited September 21, 2020) https://www.hurwitzfine.com/content/BI%20Complaint%20Survey%2009.07.20.pdf.

from a virus. A quick scan of Plaintiff's Complaint reveals references to the "virus," coronavirus, or COVID-19 some 135 times – it is, therefore, wholly disingenuous for Plaintiff to assert that its loss is unrelated to the COVID-19 virus.

To be entitled to Business Income coverage, as sought in Plaintiff's Counts I & II, under the unambiguous terms of the Lancer Policy, Plaintiff must allege (and ultimately prove), *inter alia*, that there was "direct physical loss of or damage to property" at the insured premises resulting from a Covered Cause of Loss (i.e., direct physical loss that is not excluded). Plaintiff pleads no facts supporting these coverage elements. Instead, Plaintiff merely asserts that as a result of various local and state-wide stay-at-home orders it has "been unable to use their property for its intended purpose." (Dkt No. 1, the "Complaint," at ¶¶41, 42).

Alternatively, to be entitled to Civil Authority coverage, as sought in Plaintiff's Counts III & IV, Plaintiff must plead (and prove), *inter alia,* direct physical damage to nearby uninsured property, and that access to the insured property was prohibited by an order of civil authority as a result of that damage. But Plaintiff fails to allege any such facts, again relying on the stay-at-home orders as a proxy for covered property damage.

Even assuming, *arguendo*, that none of the above was dispositive—a conclusion that defies law, logic, and the growing weight of caselaw—the Lancer Policy contains an explicit exclusion for "loss or damage resulting from any virus…that induces or is capable of inducing physical distress, illness or disease." The Virus Exclusion is unambiguous, applying broadly to the business income, extra expense, and civil authority coverages. As Plaintiff's business income claims are unmistakably tethered to the COVID-19 outbreak, which as pointed out in the Complaint is a virus capable of inducing physical distress or illness, the Virus Exclusion entirely precludes coverage.

Even if somehow the stay-at-home orders do not implicate the Virus Exclusion, the Ordinance Or Law Exclusion precludes coverage as a result of the enforcement of or compliance with any ordinance or law regulating the use of Plaintiff's property. Plaintiff alleges exactly what the Ordinance Or Law Exclusion precludes—loss or damage caused by the enforcement or compliance with governmental stay-at-home orders regulating the use of Plaintiff's property.

Because Plaintiff's Complaint does not plead facts supporting a plausible entitlement to coverage under the Lancer Policy, Plaintiff does not state a claim for which relief may by granted. The Complaint should be dismissed with prejudice, as no amount of repleading could bring the Plaintiff's claims into coverage.

## STATEMENT OF FACTS

The relevant facts are summarized in the accompanying Affidavit of Dan D. Kohane, Esq. ("Kohane Aff."), including documents and exhibits attached thereto, and Affidavit of Kirt J. Vovou, including documents and exhibits attached thereto, which are incorporated into this Memorandum of Law as if fully set forth herein.

Plaintiff purports to represent a putative nationwide class and New York sub-class of Lancer insureds "who have suffered losses due to measures put in place by civil authorities' stay-at-home or shelter-in-place orders since March 15, 2020." (Complaint at ¶55). The named Plaintiff claims to "have suffered a direct physical loss of and damage to their property because they have been unable to use their property for its intended purpose," and that "the efficient proximate cause of Plaintiff's . . . losses[] were [these] precautionary measures taken by [] government[] . . . to prevent the spread of COVID-19 in the future." Plaintiff disavows the presence of the virus on its premises, claiming that its business income loss was caused by the governmental orders rather than "because coronavirus was found in or on Plaintiff's insured property." (Complaint at ¶¶41-42).

The Lancer Policy contains standard and widely interpreted Insurance Services Office (ISO) policy forms, providing in relevant part:

### BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM

\*\*\*

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

\*\*\*

**A.  Coverage**

**1.  Business Income**

\*\*\*

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

\*\*\*

**4.  Additional Coverages**

\*\*\*

**b.  Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain caused by action of civil authority that prohibits access to the described

premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

(Vovou Aff. Ex. A at 46 (the "Lancer Policy"); *see* Complaint at ¶¶36, 38). The Lancer Policy defines a Covered Cause of Loss as a "direct physical loss unless the loss is excluded or limited in this policy." (Lancer Policy at 65). Additionally, the Lancer Policy's Business Income (Without Extra Expense) Coverage Form defines the "period of restoration" as:

**F. Definitions**

\*\*\*

3. "Period of restoration" means the period of time that:

a. Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:
(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
(2) The date when business is resumed at a new permanent location.

(Lancer Policy at 52).

The Lancer Policy also includes the New York – Exclusion of Loss Due To Virus or Bacteria endorsement (CP 01 78 08 08) (the "Virus Exclusion"), which provides in relevant part:

### NEW YORK – EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

### COMMERCIAL PROPERTY COVERAGE PART

A. The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part.

\*\*\*

(Lancer Policy at 63; *see* Complaint at ¶40).

The Lancer Policy also includes an ordinance or law exclusion:

### B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**
      The enforcement of or compliance with any ordinance or law:
      (1) Regulating the construction, use or repair of any property; or

      (2)  Requiring the tearing down of any property, including the cost of removing its debris.

          This exclusion, Ordinance Or Law, applies whether the loss results from:

      (a) An ordinance or law that is enforced even if the property has not been damaged; or

      (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property

(Lancer Policy at 65).

Given Plaintiff's allegations when applied to the unambiguous terms and conditions of the Lancer Contract of Insurance, Plaintiff has failed to state a claim for which relief can be granted.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Goldstein v. Pataki*, 516 F.3d 50, 56 (2nd Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.

At the motion to dismiss stage, the court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference." *Williams v. Time Warner, Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 [2d Cir. 2002]); *see also Stinnett v. Delta Air Lines, Inc.,* 278 F.Supp.3d 599 (E.D.N.Y. 2017) ("A document is integral to

the complaint where the plaintiff "(1) has actual notice of the document and its information and (2) has relied upon the documents in framing the complaint.") (citations and quotations omitted)). The Lancer Policy is integral to the Plaintiff's Complaint. *See National Cas. Co. v. Vigilant Ins. Co.*, 466 F.Supp.2d 533, 537 (S.D.N.Y. 2006); *see also, Hanover Ins. Co. v. Weirfield Coal, Inc.*, --- F.Supp.3d ----, 2020 WL 4261195, at *3 (E.D.N.Y. July 24, 2020).

The Court, in addition, may take judicial notice of the existence of publicly available documents—such as the Executive Orders referenced in the Complaint—since the documents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Finn v. Barney*, 471 Fed.Appx. 30, 32 (2nd Cir. 2012) (quoting Fed.R.Evid. 201[b][2]).

## ARGUMENT

The facts pled in the Complaint demonstrate, as a matter of law, that Plaintiff cannot prove an entitlement to coverage under the Lancer Policy. The Complaint seeks coverage for loss that Plaintiff alleges was caused by stay-at-home orders issued to combat the spread of the virus—yet, the Policy contains an explicit exclusion for property coverage for any "loss or damage resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." For this reason alone, the Complaint should be dismissed with prejudice. The Court's analysis, however, need not even reach the exclusions because the Complaint fails to allege the elements of covered loss—chiefly, the Complaint lacks allegations of a direct physical loss of or damage to property. Absent such a showing, the Complaint fails to state a cause of action upon which relief may be granted.

I.　　　　　　　**The Complaint Fails to Allege Covered Property Damage**

The Complaint does not allege direct physical damage to or direct physical loss of the Plaintiff's insured property. That pleading failure is fatal to the Plaintiff's claim for coverage.

To come within the insuring grant for business interruption coverage, the Plaintiff's suspension of operations must be caused by "direct physical loss of or direct physical damage to [insured] property," and, the loss or damage "must be caused by or result from a Covered Cause of Loss." (Lancer Policy at 46; *see* Complaint at ¶36). But that is not what the Plaintiff alleges. Rather, Plaintiff claims that the stay-at-home orders caused a loss of use.

> 41.  Plaintiff and all similarly situated Class members have suffered a direct physical loss of and damage to their property because they have been unable to use their property for its intended purpose.
>
> 42.  The exclusion contained in the Virus and Bacteria endorsement is not applicable because Plaintiff's and other class members', losses were not caused by a "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease", Rather, the efficient proximate cause of Plaintiff's, and other Class Members' losses, were precautionary measures taken by the governments of their respective counties and states to prevent the spread of COVID-19 in the future, *not because coronavirus was found in or on Plaintiff's insured property.*

(Complaint at ¶¶ 41-42) (emphasis added).

The Complaint never alleges a direct physical loss of or physical damage to property, or nearby property. Instead, Plaintiff goes to great pains to avoid any assertion that the COVID-19 virus was present at the insured premises. Plaintiff does not allege, for example, that the presence of the COVID-19 virus in its restaurant created a physical loss. Rather, its sole focus is on the stay-at-home orders that prevented it from opening to in-restaurant dining.

This Plaintiff's loss of use theory is contrary to the Policy terms, New York law, and has been rejected by all courts that have considered it in the current pandemic context. The requirement

of direct physical loss of or damage to insured property, in order to trigger business income coverage, is at the heart of the Lancer Policy. The Policy and the law interpreting it require a tangible, physical alteration of the insured property in order to trigger coverage. Inherent in the calculation of loss is the period of restoration, which ends when the property at the premises "should be repaired, rebuilt or replaced with reasonable speed and similar quality." (Lancer Policy at 52). The Plaintiff's loss of use construct jettisons these terms from the Policy, rendering the period of restoration a dead appendage, and Plaintiff's theory incapable of harmonizing with the express terms of coverage.

The Plaintiff's loss of use theory was first, and expressly, rejected by a Michigan state court. *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, 2020 WL 4561979, Case No. 20-258-CB-C30 (Mich. Circuit Ct. July 1, 2020). Based on a similar loss of use theory and construing similar policy language, the Michigan trial court held that "the loss of access or use of the premises due to executive orders and the Covid-19 virus crisis" did "not constitute the direct physical damage or injury that's required under the policy . . . ." (Kohane Aff. Appx. A, *Gavrilides* Transcript at 23). There, the plaintiff, the operator of a restaurant, argued that the "physical requirement is met because people were physically restricted from dine-in services," but the court found that argument to be "simply nonsense,"[2] coming "nowhere close to meeting the requirement" that there be "some

---

[2] The *Gavrilides* court is not alone in reaching the direct and pointed conclusion that the Plaintiff's claim is "nonsense." *See Franklin EWC, Inc. et al. v. The Hartford Financial Services Group, Inc., et al.*, Case No. 3:20-cv-04434-JSC, 2020 WL 5642483 (N.D. Cal. Sept. 22, 2020) ("Thus, under Plaintiffs' theory, the loss is created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply. Nonsense.").(Kohane Aff. Appx. A9, *Franklin EWC* Decision at 4).

physical alteration to or physical damage" to property at the premises. (Kohane Aff. Appx. A, *Gavrilides* Transcript at 20).

Other courts have readily agreed with the Michigan court. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, Case No. 20-CV-03213-JST, 2020 WL 5525171, at *5 (N.D. Cal. Sept. 14, 2020)("Because Mudpie's complaint contains no allegations of a physical force which "induced a detrimental change in the property's capabilities," the Court finds that Mudpie has failed to establish a "direct physical loss of property" under its insurance policy."); *Turek Enterprises, Inc. v. State Farm*, Case No. 1:20-cv-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) (""[A]ccidental direct physical loss to Covered Property' is an unambiguous term that plainly requires Plaintiff to demonstrate some tangible damage to Covered Property."); *10E, LLC v. Travelers Indemnity Co. of Connecticut et al.*, Case No. 2:20-cv-04418, 2020 WL 5359653 (C.D. Ca. Sept. 2, 2020) ("An insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage.") (amended order); *Malaube, LLC v. Greenwich Ins. Co.*, Case No. 1:20-cv-22615, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) ("[I]t is not plausible how two government orders meet that threshold when the restaurant merely suffered economic losses – not anything tangible, actual, or physical.") (Torres, U.S.M.J, R&R); *Diesel Barbershop, LLC v. State Farm Lloyds*, Case No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) ("[T]he loss needs to have been a distinct, demonstrable physical alteration of the property." [citation omitted]); and *Rose's 1 LLC v. Erie Ins. Exchange*, Case No. 2020 CA 002424 B (D.C. Super. Aug. 6, 2020) (holding "that governmental closure orders in response to the COVID-19 pandemic did not constitute "direct physical loss" because the "orders did not have any effect on the material or tangible structure of

the insured properties.").[3]

These decisions are consistent with the leading New York case addressing "direct physical loss." *See Roundabout Theatre Co. v. Contin. Cas. Co.*, 302 A.D.2d 1, 751 N.Y.S.2d 4 (1st Dept. 2002). In *Roundabout Theatre*, a midtown Manhattan scaffolding collapse caused New York City to order the closure of surrounding blocks. A Broadway theater was undamaged but rendered inaccessible. *Id.* at 5. The trial court interpreted the coverage language—"direct physical loss or damage to the property"—expansively to include "loss of use" of the property. The Appellate Division reversed, finding that the trial court "completely ignore[d]" the policy's plain language, which was "limited to losses involving physical damage to the insured's property." *Id.* at 8.

> Contrary to the ruling of the IAS court, the language in the instant policy clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage. The Insuring Agreement provides coverage for "loss of, damage to, or destruction of property or facilities ... contracted by the insured for use in connection with such Production, caused by the perils insured against." The Perils Insured clause covers *"all risks of direct physical loss or damage to the [insured's] property,"* not otherwise excluded. Reading these provisions together, the only conclusion that can be drawn is that the business interruption coverage is limited to losses involving physical damage to the insured's property.

*Id.* at 6–7, 751 N.Y.S.2d 4, 8 (emphasis added; citations omitted).

The New York appellate court concluded that, "The plain meaning of the words 'direct' and 'physical' narrow the scope of coverage and mandate the conclusion that losses resulting from

---

[3] For this Court's convenience, copies of these decisions are attached to the Kohane Affidavit at Appendix A.

off-site property damage do not constitute covered perils under the policy." *Id.* at 7. *Roundabout Theatre*, implicitly if not expressly, rejects the Plaintiff's loss of use theory of coverage.[4]

Roundabout Theatre* was applied by this Court under similar circumstances. *See Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.*, 17 F.Supp.3d 323 (S.D.N.Y. 2014). In *Newman Myers*, anticipating the landfall of Hurricane Sandy, electricity was preemptively disconnected to certain areas of New York. Relying on *Roundabout Theatre*, Judge Engelmayer concluded that a law firm that could not access its offices did not suffer direct physical loss or physical damage. "The critical policy language here—'direct physical loss or damage'— similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *Id.* at 331. "The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." *Id.*; *see also United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F.Supp.2d 343, 349 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) ("The inclusion of the modifier 'physical' before 'damages' . . . supports [defendant's] position that physical damage is required before business interruption coverage is paid."); *accord Dickie Brennan & Co., Inc. v. Lexington Ins. Co.,* 636 F.3d 683 (5th Cir. 2011)(mandatory evacuation order in anticipation of threatened storm,  not a loss of use or as a result of nearby property damage); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 440 F.Supp.3d 520, 531 (D.S.C. 2020)(mandatory hurricane

---

[4]*Roundabout Theatre* is not only on point but is also binding authority. *cf Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999)(federal courts are bound to apply the law as interpreted by New York's intermediate appellate courts unless there is "persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion.").

evacuation order, to prevent future harm, did not create a covered loss of use triggering business interruption coverage); among others.

In addition, the Southern District noted that "other provisions of the policy"—provisions which are in the Policy at issue here—"support this interpretation." *Newman Myers* 17 F.Supp.3d at 332. Business income coverage extends only through the "period of restoration," ending when the property "should be repaired, rebuilt or replaced with reasonable speed and similar quality." The court explained that "[t]he words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it." 17 F.Supp.3d at 332; *see also*, *Philadelphia Parking Authority v. Federal Ins. Co.*, 385 F.Supp.2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature.").

Here, Plaintiff's "loss of use" argument renders meaningless the Policy's use of "repaired, rebuilt or replaced" in defining the "period of restoration." There is no property in need of repair, rebuilding, or replacing, meaning there was no property with "physical" damage in the first place—and hence there is no coverage. Rather, Plaintiff's "loss of use" argument was expressly rejected in *Roundabout Theatre*. (*Compare Roundabout Theatre*, 302 A.D.2d at 7, 751 N.Y.S.2d at 8; *with* Complaint at ¶¶41, 42).

Judge Caproni recently denied a preliminary injunction sought by a magazine publisher alleging a similar impact from COVID-19 as confronted here. *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, Case No. 1:20-cv-03311-VEC (S.D.N.Y. May 14, 2020) (denying preliminary injunction sought by magazine publisher from the bench).[5] (Kohane Aff. Appx. A1, *Social Life*

---

[5] Before an official Order was entered, this matter was voluntarily discontinued by the Plaintiff with prejudice.

*Magazine* Oral Argument Transcript). Addressing similar language and arguments, albeit in a different procedural context, Judge Caproni stated unequivocally during oral argument that "New York law is clear that this kind of business interruption [claim] needs some damage to the property" before there is coverage. (*Id.* at 15). As Judge Caproni stated, COVID-19 "damages lungs. It doesn't damage printing presses." (*Id*. at 5).

A recent Illinois federal court also rejected the Plaintiff's loss of use theory, relying significantly on the New York federal court decisions in *Newman Meyers* and *Social Life.* In *Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, 2020 WL 5630465, Case No. 20-cv-2160-RWG (N.D. Ill. Sept. 21, 2020), the Illinois court held that a policy requiring a 'direct physical loss' in order to trigger business income coverage is not satisfied by a loss of access. "[It] unambiguously requires some form of actual, physical damage to the insured premises to trigger coverage. The words "direct" and "physical," which modify the word "loss," ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure." *Id.* at *2 (*citing Newman Meyers, supra.*). The Illinois court's conclusion is the same that should be reached here: "In essence, plaintiff seeks insurance coverage for financial losses as a result of the closure orders. The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property. Consequently, plaintiff has failed to plead a direct physical loss—a prerequisite for coverage" *Id*. at *3.

Restricted access to the Plaintiff's property due to government orders without any physical, tangible, demonstrable harm to the premises itself, is insufficient under the Lancer Policy and New York law to trigger coverage.

Accordingly, Plaintiff's Counts I & II should be dismissed with prejudice.

**II.     Civil Authority Coverage Does Not Apply Because the Complaint Does Not Allege Prohibited Access to the Plaintiff's Premises or a Covered Cause of Loss to Nearby Property.**

Plaintiff's Complaint also fails to establish Civil Authority coverage. The Complaint does not allege that the stay-at-home orders prohibited access to the insured premises, nor does the Complaint allege that nearby property suffered a covered cause of loss.

In order to trigger Civil Authority coverage, Plaintiff must allege: 1) damage to property other than the insured premises; 2) caused by a covered cause of loss; 3) that access to the insured premises is prohibited by order of civil authority as a result of the damage; 4) that the damage occurs within one mile of the insured premises; and 5) that the order of civil authority is taken in response to dangerous physical conditions resulting from the damage.

The Plaintiff's Complaint fails to allege facts, that if true, would establish a right to coverage. The Plaintiff, as previously discussed, does not allege a covered cause of loss to any property, its own or to other nearby property. The Complaint does not allege "direct physical loss" to any immediately surrounding property, or that access to the insured premises was prohibited due to property damage elsewhere. Rather, the Complaint merely asserts a loss of use of properties for their intended purposes, due to "precautionary measures taken by the governments of their respective counties and states to prevent the spread of COVID-19 in the future." (Complaint at ¶42). These allegations are insufficient under New York law to establish the elements of a Civil Authority coverage claim.

Plaintiff's own pleading establishes the lack of the prohibited access element. Plaintiff alleges that the New York orders allowed restaurants to continue to operate for the purposes of "take-out and delivery orders." (*See Id.* at ¶¶29, 30). This is a concession that the orders did not

"prohibit access" to the insured premises, thus, eliminating the possibility that such orders triggered Civil Authority coverage under the Policy.

Cases across the country recognize that "prohibited access" is not triggered where a policyholder's premises is only rendered less accessible. *See, e.g.*, *S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1139-41 (10th Cir. 2004) (grounding of flights after September 11th made it more difficult for customers to access plaintiff's hotels but did not "prohibit access"); *St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*, No. 2:97-cv-153 BB, 1999 WL 33537191, at *3 (N.D. Miss. Nov. 4, 1999) (civil authority coverage not triggered by bridge closure that reduced casino-hotel's business by 80% but did not completely cut off access); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (curfews imposed during period of civil unrest did not specifically prohibit access to the policyholders' movie theaters).

Even if access was alleged to be "prohibited," it is not alleged as the "direct result" of property damage to "property in the immediate area" caused by a covered cause of loss. There is no allegation in the Complaint about damaged property in or around Plaintiff's premises, that caused the insured's otherwise undamaged property to close.

The Complaint is devoid of any nexus between the insured's closure of its business and damage to any other property.

The governmental orders at issue were, concededly, issued to keep people distant from one another, "to prevent the spread of COVID-19 in the future." (Complaint at ¶42). Courts routinely reject civil authority claims where orders of civil authority are aimed at fear of future harm, not existing property loss or damage. For example, the Second Circuit's decision in *United Air Lines, Inc. v. Ins Co. of State of PA*, 439 F.3d 128 (2d Cir. 2006) is instructive. There, United sought

recovery for losses caused by the temporary shutdown of Reagan Washington National Airport following the September 11, 2001 terrorist attacks. United invoked a similar clause, providing coverage where access "is prohibited by order of civil authority as a direct result of damage to adjacent premises." *Id.* at 129. According to United, the shutdown was due to damage at the Pentagon nearby. The Second Circuit found there was no coverage because the government's "decision to halt operations at the Airport indefinitely was based on fears of future attacks," and was not occasioned by the damage to the Pentagon. *Id.* at 134.

Just as in *United Air Lines*, the "order of a civil authority" here has everything to do with protecting human life, and nothing to do with any damaged property. No damaged property is identified in the Complaint, which concedes that the orders were issued "to prevent the spread of COVID-19 in the future." (Complaint at ¶42). Returning to the *Social Life* decision, Judge Caproni observed that the virus "damages lungs. It doesn't damage printing presses." (Kohane Aff. Appx. A1, *Social Life* Oral Argument Transcript at 5.) This is exactly right. The governmental orders are about protecting people from infecting one another, not about protecting against any risks relating to property damage. *See also* Kohane Aff. Ex. B, Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) (order based on risk of "community contact transmission of COVID-19").

This Court should follow *United Air Lines* and conclude that Plaintiff has not alleged facts that would trigger Civil Authority coverage. *See also, e.g.*, *Dickie Brennan & Co. v. Lexington Ins. Co.*, *supra.* at 687 (5th Cir. 2011); *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, No. CIV.A. 09-6057, 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2010) ("Clearly, the Mayor's August 30th evacuation order did not trigger coverage because although it prohibited access, it did not do so based on property damage—a clear requirement under the Policy."); *Paradies Shops, Inc. v. Sentinel Ins. Co.*, No. 1:03-cv-3154-JEC, 2004 WL 5704715, at *1-2, *6

(N.D. Ga. Dec. 15, 2004) (holding that there was no coverage in part because the FAA's order that grounded planes after September 11th was not a "direct result" of property damage); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, No. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008) (evacuation of county before hurricane making landfall was "due to" fear of *future* damage rather than existing damage).

Of course, this Court need not reach back to the September 11th or Hurricane Sandy cases in order to reach this conclusion. Just recently a California federal court observed the circular and nonsensical nature of the Plaintiff's very loss of use theory. *See Franklin EWC, Inc. et al. v. The Hartford Financial Services Group, Inc.*, *supra.* Taking Plaintiff's argument to its absurd conclusion, the Northern District of California, reasoned that:

> Under Plaintiffs' theory, the Closure Orders (the orders of a civil authority) were issued as the direct result of the Closure Orders, a claimed Covered Cause of Loss. However, the Closure Orders cannot have been issued as a result of the Closure Orders; instead, as the complaint repeatedly alleges, they were issued as the direct result of COVID-19—a cause of loss that falls squarely within the Virus Exclusion. *See Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020) (holding that an insurance policy's Virus Exclusion barred plaintiffs' recovery for losses incurred during the COVID-19 pandemic where "[p]laintiffs [] pleaded that COVID-19 [was] in fact the reason for [county and state shutdown orders] being issued" and that, while the "[o]rders technically forced [plaintiffs' properties] to close to protect public health, the [o]rders only came about sequentially as a result of the COVID-19 virus spreading . . . . [t]hus, it was the presence of COVID-19 . . . that was the primary root cause of [p]laintiffs' [losses].") (emphasis added).

(Kohane Aff. Appx. A9, *Franklin EWC* Decision at 5). As the court continued, "[t]here is nothing in the complaint that supports an inference that the Closure Orders were issued as a direct result of the Closure Orders (Plaintiffs' theory of the Covered Cause of Loss) and that the Closure Orders

themselves caused damage to neighboring property. Plaintiffs' theory for recovery under the Civil Authority Provision fails." *Id.*

Plaintiff's Complaint here has not alleged, and cannot allege, what is necessary to trigger coverage: that its business interruption was caused by a loss of access to its property due to a civil authority order that was "the direct result" of loss or damage to property in the "immediate area."

Counts III and IV, therefore, should be dismissed with prejudice.

### III.    The Virus Exclusion Precludes Coverage

The Complaint casts COVID-19 as the central figure in Plaintiff's claim for coverage. There can be no reading of the Plaintiff's claim for coverage without COVID-19. Even in an effort to plead around the Virus Exclusion, Plaintiff can't but mention COVID-19: "[T]he efficient proximate cause of Plaintiff's, and other Class Members' losses, were precautionary measures taken by the governments of their respective counties and states *to prevent the spread of COVID-19 in the future*…." (Complaint at ¶41 [emphasis added]). And, the very orders to which the Plaintiff cites are replete with reference to the pandemic. This case is absolutely "caused by or resulting from" the COVID-19 virus. The Virus Exclusion, therefore, clearly precludes coverage and the Complaint should be dismissed with prejudice.

Plaintiff's complaint provides *ad nauseum* that this matter results from the COVID-19 virus. Plaintiff alleges in detail—and it is beyond dispute—that COVID-19 is a virus that induces or is capable of inducing physical distress, illness or disease.[6] (*See* Complaint at ¶¶ 16-28). With

---

[6] This is the type of fact that this Court is empowered to take judicial notice of pursuant to Fed. R. Evid. 201(b) because it is generally known within this Court's territorial jurisdiction that the COVID-19 Coronavirus is a virus that has and is capable of inducing physical distress, illness, or disease. Plaintiff essentially asks this Court to ignore the 'elephant in the room' and 'bury its head in the sand' with respect to the straightforward application of the Virus Exclusion to the facts at issue in this matter.

some 135 references to the COVID-19 virus in just 27 pages of its Complaint, Plaintiff cannot escape the pandemic. And, by incorporating Governor Cuomo's Executive Order Nos. 202, 202.3, 202.4, and 202.8 by reference, Plaintiff further expands the role of the virus in its pleading.

Executive Order No. 202, for example, provides that the "novel coronavirus, COVID-19, outbreak" resulted in a nationwide "public health emergency" and required governmental intervention in "addressing the threat that COVID-19 poses to the health and welfare of [New York] residents and visitors." (Kohane Aff. Ex. B).

The Virus Exclusion applies to all "loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease." The Virus Exclusion applies to all coverage parts. (Complaint at ¶33, 34; Lancer Policy at 63 ("The exclusion . . . applies to all coverage under all forms and endorsements that comprise this Coverage Part, including but not limited to . . . business income, extra expense or action of civil authority.").

The gravamen of Plaintiff's Complaint falls squarely within the unambiguous Virus Exclusion. The business income loss for which Plaintiff seeks coverage is caused by and results from a virus "that induces or is capable of inducing physical distress, illness or disease." (Complaint at ¶33; Lancer Policy at 63). Despite alleging that COVID-19 causes "fatal conditions of severe respiratory failure that requires ventilation and support in an intensive care unit (ICU)," (Complaint at ¶20), Plaintiff asks this Court to pay no attention to the man behind the curtain, and instead ignore that the impact of the COVID-19 virus is at the core of the insured's claim for coverage. Without the pandemic there is no public health crisis causing the issuance of stay-at-home orders, which Plaintiff claims is the cause-in-chief of its loss. That the Plaintiff's loss is caused by or results from" COVID-19 should be beyond dispute. To hold otherwise would strain credulity.

Courts that have reached the issue, in *dicta*, or otherwise, have concluded that the Virus Exclusion unambiguously precludes coverage for COVID-19 business interruption claims. *See Martinez, DMD, P.A. v. Allied Insurance Company of America*, Case No. 2:20-cv-00401-FtM-66NPM, 2020 WL 5240218 (M.D. Fla. Sept. 2, 2020) ("Because Martinez's damages resulted from COVID-19, which is clearly a virus, neither the Governor's executive order narrowing dental services to only emergency procedures nor the disinfection of the dental office of the virus is a "Covered Cause of Loss" under the plain language of the policy's exclusion."); *Diesel Barbershop*, *supra*, ("Even if the Court had found that the language within the Policies was ambiguous and/or that Plaintiffs properly pled direct physical loss to the Properties, the Court finds that the Virus Exclusion bars Plaintiffs' claims."); *see also, 10E, LLC v. Travelers Indemnity Co. of Connecticut et al.*, Case No. 2:20-cv-04418-SVW-AS, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) ("While the Court does not address the scope of the Policy's virus exclusion or consider any issues of causation, the Court notes its skepticism that Plaintiff can evade application of the Policy's virus exclusion.").[7]

Notably, ambiguity is not created where one party's interpretation "'strains the contract language beyond its reasonable and ordinary meaning.'" *Chase Manhattan Bank, N.A. v. Keystone Distributors Inc.*, 873 F.Supp. 808, 811 (S.D.N.Y. 1994) (citing *Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 [2d Cir.1992] [*quoting Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957)]). That is exactly what Plaintiff has attempted to do here. This Court should resist straining credulity in the name of sympathy. COVID-19 is unambiguously a virus that is excluded from coverage under the plain meaning of

---

[7] For this Court's convenience, copies of these decisions are attached to the Kohane Affidavit at Appendix A.

the Virus Exclusion.

The Plaintiff's Complaint, in its entirety, should be dismissed with prejudice.

### IV.     The Ordinance Or Law Exclusion Also Precludes Coverage

Even in the absence of the Virus Exclusion, the Ordinance Or Law Exclusion precludes coverage for the Plaintiff's allegations.

The Lancer Policy excludes coverage for "loss or damage caused directly or indirectly by . . . [t]he enforcement of or compliance with any ordinance or law regulating the . . . use . . . of any property." (Lancer Policy at 65). Under this exclusion, "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." (*Id.*). Additionally, this exclusion applies regardless of "whether the loss results from [a]n ordinance or law that is enforced even if the property has not been damaged." (*Id.*).

This exclusion makes clear that a Covered Cause of Loss must exist independent of the enforcement of or compliance with any ordinance or law regulating the use of Plaintiff's property. *Ira Stier, DDS, P.C. v. Merchants Ins. Group*, 127 A.D.3d 922, 7 N.Y.S.3d 365 (2nd Dept. 2015) ("This provision excludes coverage for losses, including business income losses, caused by the enforcement of the law and, here, it was the enforcement of the Building Code by the Town's Building Department which prevented the plaintiff from utilizing the premises . . . ."); *Schlamm Stone & Dolan, LLP. v. Seneca Ins. Co.*, 6 Misc.3d 1037(A), 800 N.Y.S.2d 356 (Table) (N.Y. Sup. 2005) ("[P]laintiff has not alleged that the order was so closely linked to the damage to plaintiff's property that it was the damage to plaintiff's property, and not the order itself, that caused plaintiff's loss").

Here, even if COVID-19 is somehow divorced from this claim, the Ordinance Or Law Exclusion precludes coverage because the Plaintiff alleges that its loss is caused by the

enforcement of or compliance with governmental stay-at-home orders regulating the use of Plaintiff's property. Plaintiff cannot have it both ways: if the virus is not the cause of the loss, but rather the social distancing orders themselves are the cause of loss, then the Ordinance Or Law Exclusion is applicable to this claim.

For this separate reason, the Plaintiff's Complaint should be dismissed with prejudice.

## V.      Leave to Amend Should Be Denied As Futile

Plaintiff should not be granted leave to amend as such amendment would be futile.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." *Lucente v. International Business Machines Corp.*, 310 F.3d 243 (2nd Cir. 2002) (quoting Fed.R.Civ.P. 15[a]). "Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Id.* (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (per curiam)). It is appropriate to deny leave to amend where the proposed amendment is futile. *Id.* (citing *Nettis v. Levitt*, 241 F.3d 186, 193 [2d Cir. 2001]; *see also Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 [2d Cir.1990] ( "[W]here, as here, there is no merit in the proposed amendments, leave to amend should be denied.")). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Id.* (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 [2d Cir. 2002]).

Simply put, a business interruption and/or civil authority claim predicated upon COVID-19 cannot trigger coverage under the terms of the Lancer Policy as a matter of New York law; and if it could, it would be excluded from coverage by the unambiguous application of the Lancer Policy's Virus or Ordinance exclusions.  Any attempt to amend the complaint by Plaintiff would be futile.

## **CONCLUSION**

Lancer Insurance Company has demonstrated that Plaintiff has failed to plead facts on the face of its Complaint sufficient to entitle it to business income or civil authority coverage under the Lancer Policy. Plaintiff's Complaint should be dismissed with prejudice, together with such other, further, and different relief as this Honorable Court deems just, equitable, and proper.

DATED:        October 1, 2020

HURWITZ & FINE, P.C.

_____
Dan D. Kohane, Esq.
Steven E. Peiper, Esq.
Lee S. Siegel, Esq.
*Attorneys for Defendant,*
*Lancer Insurance Company*
1300 Liberty Building
Buffalo, New York 14202
(716) 849-8900

TO:      ALL COUNSEL VIA ECF