UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

CAMP 1382 LLC d/b/a CAMPAGNOLA
RESTAURANT, on behalf of itself and all
others similarly situated,
       Plaintiff

              Case 1:20-cv-03336-RA

vs.

LANCER INSURANCE COMPANY,

       Defendant.
_____


# REPLY MEMORANDUM OF LAW IN
# FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS

            HURWITZ & FINE, P.C.
            Dan D. Kohane, Esq.
            Steven E. Peiper, Esq.
            Lee S. Siegel, Esq.
            *Attorneys for Defendant,*
            *Lancer Insurance Company*
            1300 Liberty Building
            Buffalo, New York 14202
            (716) 849-8900

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................. 1

Argument ................................................................................................................................ 1

Point I ..................................................................................................................................... 1

      PLAINTIFF DOES NOT ALLEGE A "DIRECT
      PHYSICAL LOSS" UNDER NEW YORK LAW

Point II ................................................................................................................................... 8

      THE VIRUS AND ORDINANCE OR LAW
      EXCLUSIONS PRECLUDE COVERAGE

Conclusion ............................................................................................................................ 10

## TABLE OF AUTHORITIES

Page

*Burlington Ins. Co. v. NYC Transit Authority*,
29 N.Y.3d 313 (2017) ...........................................................................................................5

*Essex v. BloomSouth Flooring Corp.*,
562 F.3d 399 (1st Cir. 2009)..................................................................................................2

*Franklin EWC, Inc. et al. v. The Hartford Financial Services Group, Inc.*,
et al., Case No. 3:20-cv-04434-JSC, 2020 WL 5642483
(N.D. Cal. Sept. 22, 2020) .................................................................................................7, 9

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,
2014 WL 6675934, at *16-17 (D.N.J. Nov. 25, 2014) ......................................................2, 4

*Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*,
Case No. 1:20-CV-2939-TWT, 2020 WL 5938755,
at *4 (N.D. Ga. Oct. 6, 2020)..............................................................................................4, 6

*Hillcrest Optical, Inc. v. Continental Cas. Co.*,
Case No. 1:20-CV-275-JB-B, 2020 WL 6163142,
at *8 (S.D. Ala. Oct. 21, 2020) ..............................................................................................6

*Iannucci v. Allstate Ins. Co.*,
354 F. Supp. 3d 125 (N.D.N.Y. 2018)...................................................................................5

*Ira Stier, D.D.S. P.C. v. Merchants Ins. Grp.*,
127 A.D.3d 922, 7 N.Y.S.3d 365 (2nd Dept. 2015) ..............................................................9

*Malaube, LLC v. Greenwich Ins. Co.*,
Case No. 1:20-cv-22615, 2020 WL 5051581
(S.D. Fla. Aug. 26, 2020).......................................................................................................6

*Maryland Cas. Co. v. W.R. Grace and Co.*,
23 F.3d 617 (2d Cir. 1993).....................................................................................................8

*Motorists Mut. Ins. Co. v. Hardinger*,
131 F. App'x 823 (3d Cir. 2005) ...........................................................................................2

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*,
Case No. 20-CV-03213-JST, 2020 WL 5525171, at *5
(N.D. Cal. Sept. 14, 2020) .....................................................................................................6

*N&S Restaurant LLC. v. Cumberland Mut. Fire Ins. Co.*,
Case No. 1:20-cv-05289-RBK-KMW, 2020 WL 6501722
(D.N.J. November 5, 2020)....................................................................................................9

*Newman Myers Kreines Gross Harris, P.C. v.*
*Great Northern Insurance Co.*, 17 F. Supp.3d 323 (S.D.N.Y. 2014) .................................. 1 *passim*

*Pahuta v. Massey-Ferguson, Inc.*,
170 F.3d 125 (2d Cir. 1999) .......................................................................................................2

*Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*,
311 F.3d 226 (3d Cir. 2002) ....................................................................................................2, 4

*Raymond H Nahmad DDS et al. v. Hartford Cas. Ins. Co.*,
Case No. 1:20-cv-22833-BB, 2020 WL 6392841,
at *9 (S.D. Fla. Nov. 2, 2020) ....................................................................................................9

*Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.*,
Case No. 2:20-cv-00087-KS-MTP, 2020 WL 6503405,
at *6 (S.D. Miss. Nov. 4, 2020) ..................................................................................... 5-6 *passim*

*Roundabout Theatre Co. v. Contin. Cas. Co.*,
302 A.D.2d 1, 751 N.Y.S.2d 4 (1st Dept. 2002) ......................................................................1, 2

*Sandy Point Dental, PC v. The Cincinnati Ins. Co.*,
2020 WL 5630465, Case No. 20-cv-2160-RWG
(N.D. Ill. Sept. 21, 2020) ............................................................................................................6

*TRAVCO Ins. Co. v. Ward*,
715 F. Supp. 2d 699 (E.D. Va. 2010) .........................................................................................2

*Travelers Cas. Ins. Co. of Am. v. Geragos and Geragos*,
Case No. CV 2:20-03619 PSG (Ex), 2020 WL 6156584,
at *3-4 (C.D. Cal. Oct. 19, 2020) ................................................................................................9

*United Airlines, Inc. v. Ins. Co. of State of Pa.*,
385 F. Supp.2d 343 (S.D.N.Y. 2005),
*aff'd* 439 F.3d 128 (2d Cir. 2006) ..............................................................................................2

*Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*,
Case No 3:20-cv-03750-WHO, 2020 WL 6562332
(N.D. Cal. Nov. 9, 2020) ............................................................................................................6

*Western Fire Ins. Co. v. First Presbyterian Church*,
437 P.2d 52 (Colo. 1968) ........................................................................................................3, 4

Statutes

Fed.R Civ.P. 12(b)(6) ...................................................................................................................1

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in further support of LANCER INSURANCE COMPANY'S ("Lancer"), motion to dismiss this insurance coverage action filed by CAMP 1382 LLC d/b/a CAMPAGNOLA RESTAURANT ("Plaintiff"), pursuant to Fed. R. Civ. P. 12(b)(6) for a failure to state a cause of action. (*See* Dkt. 19-23)

In its Opposition (Dkt. 27), Plaintiff attempts to trigger Business Income coverage while ducking the Policy's Virus Exclusion, arguing that its claimed loss was caused not by the coronavirus but instead by governmental stay-at home orders precluding dine-in restaurant services. This argument fails as a matter of law because: 1) a governmental order does not cause a direct physical loss of covered property; 2) the Virus Exclusion precludes coverage, especially where the Plaintiff alleges throughout its Complaint that the stay-at home orders were issued to slow the spread of the coronavirus (*see e.g.* Dkt. 1 at ¶¶2, 3, 8, 9, 41) and the orders cannot be divorced from the reason why they were issued; and 3) in addition to the Virus Exclusion, the Policy also precludes coverage for loss or damage caused by a governmental order.

The Court should reject Plaintiff's arguments and dismiss this case with prejudice.

## ARGUMENT

**POINT I:  PLAINTIFF DOES NOT ALLEGE A "DIRECT PHYSICAL LOSS" UNDER NEW YORK LAW**

Established New York precedent plainly dispels Plaintiff's position that a loss of use of property as a result of an order of civil authority is, alone, sufficient to trigger Business Income or Civil Authority coverage. *See Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 751 N.Y.S.2d 4 (1st Dept. 2002); *Newman Myers Kreines Gross, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014). Plaintiff must demonstrate "actual, demonstrable harm to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves,

or the adverse business consequences that flow from such closure." *Newman Myers*, 17 F. Supp. 3d at 331; *see also United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 349 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) ("The inclusion of the modifier 'physical' . . . supports [the] position that physical damage is required before business interruption coverage is paid.").

Plaintiff—unable to distinguish these cases—argues that they were incorrectly decided. In doing so, Plaintiff implicitly concedes that these decisions are indistinguishable and contrary to its position. *Roundabout Theatre* is on point and binding authority. *Cf Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999) (federal courts are bound to apply the law as interpreted by New York's intermediate appellate courts unless there is "persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion.").

The Plaintiff's cases (none of which are from a New York trial or appellate court), involve overwhelming physical intrusion by a contaminant, noxious odor, or vapor that prohibits the property's functionality, rendering occupancy of the very premises a danger.[1] In each case there was a pervasive, physical impact on the insured property, which the courts concluded was tantamount to a direct physical loss of or damage to the insured property. Such cases involved circumstances "where the building in question ha[d] been rendered unusable by physical forces." *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010). As courts have observed, state and local COVID-19 orders were issued, not because any particular premises became

---

[1] *See Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934 (D. N.J. Nov. 25, 2014) (ammonia vapors); *Port Authority of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) (asbestos); *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823 (3d Cir. 2005) (E. Coli in water supply); *Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) (unpleasant odor); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 709 (E.D. Va. 2010), aff'd, 504 F. App'x 251 (4th Cir. 2013) (toxic gases).

unusable as a result of physical forces—even Plaintiff acknowledges that New York restaurants were free to continue to use their premises for food preparation for off-premises dining[2]—but instead were issued to limit person-to-person transmission of the virus by closing places of congregation (such as bars, restaurants, bowling alleys, theaters, churches, and synagogues).

Allowing coverage absent a "direct" and "physical" harm to (or emanating from) the premises impermissibly renders those policy terms meaningless. Plaintiff provides no support for its novel theory of coverage that a "direct physical loss of . . . property"[3] occurs when a government order alone, without more, prohibits that property's use.

Unsurprisingly, several cases cited by Plaintiff actually support Lancer's reasonable policy interpretation. For example, in *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968), the Colorado Supreme Court held that gasoline infiltration rendering occupancy of a church unsafe, was a loss of use.

> It is perhaps quite true that the so-called "loss of use" of the church premises, standing alone, does not in and of itself constitute a "direct physical loss." A "loss of use" of course could be occasioned by many different causes. But, in the instant case, the so-called "loss of use," occasioned by the action of the Littleton Fire Department, cannot be viewed in splendid isolation, but must be viewed in proper context. When thus considered, this particular "loss of use" was simply the consequential result of the fact that because of the accumulation of gasoline around and under the church building the premises became so infiltrated and saturated as to be uninhabitable, making further use of the building highly dangerous. All of which we hold equates to a direct physical loss within the meaning of that phrase as used by the Company in its Special Extended Coverage Endorsement insuring against "all other risks."

---

[2] Dkt. 1 at ¶¶29-30 ("Restaurants were limited to take-out and delivery orders only.").
[3] Plaintiff suggests Lancer's interpretation of "loss" and "damage" results in surplusage. However, this merely distracts from the language actually at issue, which is the "direct physical loss of . . . property" as compared to the "direct physical . . . damage to property." Plaintiff would impermissibly require this Court to add the language "direct physical loss [of use] of property."

HURWITZ & FINE, P.C.
1300 LIBERTY BUILDING
BUFFALO, NEW YORK 14202

3

*Id.* at 55. In *Western Fire*, loss of use was the result of a direct physical loss caused by physical forces (*i.e.* pervasive gasoline infiltration). The court expressly found that the church's loss of use due to the fire department's closure order alone was insufficient absent "proper context," i.e. a direct physical force rendering occupancy of the insured premises "highly dangerous."

Plaintiff also misinterprets the holding of *Port Auth. of N.Y. & N.J.*, where the Third Circuit, applying New York law, concluded that the "mere presence of asbestos" was not "physical loss or damage." *Port Auth. of N.Y. & N.J., supra.* at 236. Rather, a physical loss required an "actual release of asbestos fibers" rendering the structure "useless or uninhabitable."

> [T]he policies cover "physical loss," as well as damage. When the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner.

*Id*. The Third Circuit agreed that a general threat of future damage lacks the "distinct and demonstrable character necessary for first-party insurance coverage." *Id.* Requiring contamination at a "heightened" level of uninhabitability is proper because the "effect of asbestos fibers in such quantity is comparable to that of fire, water or smoke on a structure's use and function." *Id.*; *see also Gregory Packaging, Inc.*, 2014 WL 6675934, at *16-17 (D.N.J. Nov. 25, 2014) (finding, in reliance on *Port Auth. of N.Y. & N.J.*, ammonia gas "physically transformed the air" in the insured facility, making it "unfit for occupancy" and "physically rendered the facility unusable").

By contrast, Plaintiff argues that coverage is owed solely because New York's governmental orders diminished its ability to use its property. (Dkt. 27 at 8-9, 14-15, 18). There is simply nothing "direct" or "physical" about these government orders.[4] Plaintiff seeks coverage for

---

[4] In *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, Case No. 1:20-CV-2939-TWT, 2020 WL 5938755 at *4 (N.D. Ga. Oct. 6, 2020), the court noted that "[u]nder the Plaintiffs' logic, a minute before the Governor issued the Order, the dining rooms existed in one state. A minute later, the Governor issued the Order, and the restaurant underwent a direct physical change that

economic loss absent a "physical" event, which is insufficient to constitute a "direct physical loss of . . . property." *See Iannucci v. Allstate Ins. Co.*, 354 F. Supp. 3d 125, 140 (N.D.N.Y. 2018) ("[T]he requirement that the loss be 'physical,' is widely held to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." (internal quotation marks omitted)).

Plaintiff ignores other components of the policy's insuring agreement. The Policy requires, as preconditions to Business Income coverage, a suspension of operations during the period of restoration, caused by direct physical loss of or damage to the insured property, resulting from a covered cause of loss. (Dkt. 1 at 48). The inability of Plaintiff to establish a "period of restoration" and/or Covered Cause of Loss are independent reasons why coverage is not triggered.

First, despite Plaintiff's misconstruction of Lancer's "period of restoration" argument (*see* Dkt. 27 at 15-16), Lancer asserts exactly what was articulated in *Newman Myers*—that the definition of "period of restoration" itself reinforces the requirement that any loss be "direct" and "physical." The "period of restoration" ends when the property is either repaired, rebuilt, or replaced. (Dkt. 22-1 at 55). Plaintiff's loss of use argument impermissibly renders the "period of restoration" meaningless. *See Burlington Ins. Co. v. NYC Transit Authority*, 29 N.Y.3d 313 (2017) (noting New York's rule against rendering policy terms meaningless). "If there is no requirement that physical loss of or physical damage to the property be involved, the definition of the time period for paying the claim makes no sense." *Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.*, Case No. 2:20-cv-00087-KS-MTP, 2020 WL 6503405, at *6 (S.D. Miss. Nov. 4,

---

left the dining rooms in a different state. This interpretation of the contractual language exceeds any reasonable bounds of possible construction, pushing the words individually and collectively beyond what any plain meaning can support.").

2020)(denying business income coverage for COVID-19); *Hillcrest Optical, Inc. v. Continental Cas. Co.*, Case No. 1:20-CV-275-JB-B, 2020 WL 6163142, at *8 (S.D. Ala. Oct. 21, 2020) (denying business income coverage for COVID-19, noting that "Plaintiff's inability to use its property was not caused by an unsound and or unhealthy condition of the property itself, which necessitated repair, rebuilding, or replacement."); *Henry's Louisiana Grill, Inc.*, *supra* at *5-6 (N.D. Ga. Oct. 6, 2020) ("This definition appears to contemplate a range of potential covered damages, ranging from those requiring repairs or replacements to those requiring the relocation of the business. This range of contemplated harms aligns with an understanding that 'loss of' means total destruction while 'damage to' means some amount of harm or injury.").

Other COVID-19 business interruption dismissals have relied on Southern District of New York precedent, concluding that "direct physical loss of or damage to property" requires rebuildable, repairable, or replaceable physical loss or damage. *See, e.g.*, *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, Case No. 20 CV 2160, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, Case No. 20-cv-3213-JST, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020); *Malaube, LLC v. Greenwich Ins. Co.*, Case No. 20-22615-Civ-WILLIAMS/TORRES, 2020 WL 5051581, at *9 (S.D. Fla. Aug. 26, 2020) (Torres, U.S.M.J., R&R); *see also Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*, Case No 3:20-cv-03750-WHO, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020) (relying *inter alia* on *Mudpie, Inc.*, *supra*, concluding that government closure orders do not independently trigger loss of use coverage).

In *Real Hospitality*, the Southern District of Mississippi recognized that a similarly plead complaint as here failed to allege a permanent loss of a restaurant or any actual damage, but only that the shutdown orders precluded dine-in services. That court, like so many others have done when confronted with this theory, found such allegations insufficient to trigger coverage. "Reading

the policy as a whole, the court finds that plaintiff's complaint fails to state a claim because it does not allege that any insured property was damaged or that plaintiff was permanently dispossessed of any insured property. Consequently, plaintiff's contention that the 'loss of property' reasonably includes loss of usability is not sustainable." *Real Hospitality, supra,* at *6.

Here, Plaintiff's property does not need to be "repaired, rebuilt or replaced." Rather, the restrictions implemented by the closure orders must merely be lifted. It strains credulity that property without demonstrable, physical change could undergo a "period of restoration."

Additionally, Plaintiff's proposed inclusion of a bare loss of use due to a government order as a Covered Cause of Loss renders the Civil Authority coverage nonsensical. Plaintiff seeks coverage under the Lancer Policy's Civil Authority coverage, which provides that "[w]hen a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain caused by action of civil authority that prohibits access to the described premises," and requires that "[t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." (Dkt. 21-1 at 49). Why Civil Authority coverage is not implicated here is best said by the Northern District of California:

> Under Plaintiffs' theory, the Closure Orders (the orders of a civil authority) were issued as the direct result of the Closure Orders, a claimed Covered Cause of Loss. However, the Closure Orders cannot have been issued as a result of the Closure Orders . . . .

*Franklin EWC, Inc. et al. v. The Hartford Fin. Svcs. Group, Inc., et al.*, Case No. 3:20-cv-04434-JSC, 2020 WL 5642483 at * 2 (N.D. Cal. Sept. 22, 2020). "At bottom, the Closure Orders cannot possibly be the same as the Covered Cause of Loss." *Id.*

This flawed circular reasoning, must be rejected as a loss of use due to a government order cannot itself constitute a Covered Cause of Loss triggering Civil Authority coverage. The

Plaintiff's Complaint fatally fails to allege a covered loss and should be dismissed with prejudice.

### POINT II:   THE VIRUS AND ORDINANCE OR LAW EXCLUSIONS PRECLUDE COVERAGE

Plaintiff again attempts to rewrite the unambiguous Lancer Policy in order to create coverage where there is none. The Virus Exclusion, Plaintiff argues, only applies if there is a viral "infestation" of its property. (Dkt. 27 at 25). How does Plaintiff get there: by incorporating a physical infestation requirement supposedly found in a separate (but deleted) fungus exclusion. Plaintiff's argument rests on language deleted by the New York Changes – Fungus Wet Rot And Dry Rot Endorsement ("A. In the Causes Of Loss…Special Form…the exclusion titled "Fungus", Wet Rot, Dry Rot And Bacteria are deleted."). (Dkt. 21-1 at 64). Since the relied upon "fungus" exclusion is not even part of the Policy, Plaintiff's argument, while demonstrably wrong and a gross distortion of the rules of contract interpretation, is moot. Moreover, while Plaintiff repeatedly attempts to read in an infestation requirement, the only reference in the Lancer Policy to "nesting or infestation" is by insects, birds, rodents, and other animals. (Dkt. 21-1 at 27 and 28).

The Virus Exclusion provides that there is no coverage "for any loss caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Dkt. 21-1 at 66). There is no "infestation" requirement.[5]

Plaintiff's Complaint overwhelmingly establishes that its alleged loss of use results from the coronavirus (*See* Dkt. 1 at ¶¶ 16-28). Notwithstanding, Plaintiff insists that "the efficient proximate cause of [Plaintiff's] loss was the Closure Orders, not coronavirus." (Dkt. 27 at 28). In

---

[5] Despite Plaintiff's attempt to characterize the Virus Exclusion as ambiguous, the interpretation urged is unreasonably contorted and, given that the "[i]nterpretation of unambiguous contract language does not bring extrinsic evidence into play," this Court should disregard "ISO Circular LI-CF-2006-175" referenced in Plaintiff's opposition. *See Maryland Cas. Co. v. W.R. Grace and Co.*, 23 F.3d 617, 625 (2d Cir. 1993).

the word of Magistrate Judge Jacqueline Scott Corley, "Nonsense." *Franklin EWC, Inc. supra at* *2 (rejecting the very argument set forth herein). The Plaintiff unmistakably alleges that any so-called loss of use was caused by or resulting from COVID-19. Plaintiff's theory requires this Court to view New York's orders in 'splendid isolation' from the pandemic. Commonsense application of the Virus Exclusion does not permit the luxury of such a segmented worldview.

In the few short weeks since Lancer filed its motion to dismiss, numerous other courts have agreed that the Virus Exclusion precludes business interruption coverage for COVID-19. *See e.g., N&S Restaurant LLC. v. Cumberland Mut. Fire Ins. Co.,* Case No. 1:20-cv-05289-RBK-KMW, 2020 WL 6501722 (D.N.J. November 5, 2020) ("Plaintiff argues that the Virus Exclusion does not apply because the 'cause of Plaintiff's loss was the Closure Orders, not the coronavirus.'. . . The Court finds Plaintiff's arguments unpersuasive."); *Real Hospitality, LLC, supra* at *8; *Raymond H Nahmad DDS et al. v. Hartford Cas. Ins. Co.*, Case No. 1:20-cv-22833-BB, 2020 WL 6392841, at *9 (S.D. Fla. Nov. 2, 2020); *West Coast Hotel Mgmt., LLC et al. v Berkshire Hathaway Guard Ins. Co. et al.*, Case No. 2:20-cv-05663-VAP-DFMx, 2020 WL 6440037, at *6 (C.D. Cal. Oct. 27, 2020); *Travelers Cas. Ins. Co. of Am. v. Geragos and Geragos*, Case No. CV 2:20-03619 PSG (Ex), 2020 WL 6156584, at *3-4 (C.D. Cal. Oct. 19, 2020). Coronavirus is the 'elephant in the room' that cannot be ignored. The Virus Exclusion unambiguously precludes coverage.

Alternatively, even accepting Plaintiff's position as correct—which it is not—coverage is barred by the Lancer Policy's Ordinance Or Law Exclusion. The Policy's Ordinance or Law Exclusion precludes coverage for "loss or damage caused directly or indirectly by . . . the enforcement of or compliance with any ordinance or law . . . regulating the . . . use . . . of any property." *Ira Stier, D.D.S. P.C. v. Merchants Ins. Grp.*, 127 A.D.3d 922, 7 N.Y.S.3d 365, 367 (2nd Dept. 2015) (holding that an Ordinance or Law Exclusion bars coverage for loss, including

business income loss, caused by the enforcement of the law). Plaintiff's argument against the plain application of the Ordinance Or Law Exclusion places nonexistent preconditions on its application. (Dkt. 27 at 29-30). The Ordinance Or Law Exclusion does not require a "violation" of some ordinance or law—merely its enforcement. And, Plaintiff plainly alleges that the enforcement of New York's Executive Orders resulted in its reduced operational capacity. (Dkt. 1 at ¶¶29-30, 42). Thus, coverage is plainly excluded under the Ordinance or Law Exclusion.

## CONCLUSION

Plaintiff has failed to plead facts on the face of its Complaint sufficient to entitle it to business income or civil authority coverage under the Lancer Policy. Plaintiff's Complaint should be dismissed with prejudice, together with such other, further, and different relief as this Honorable Court deems just, equitable, and proper.

DATED:   November 13, 2020

HURWITZ & FINE, P.C.

_____
Dan D. Kohane, Esq.
Steven E. Peiper, Esq.
Lee S. Siegel, Esq.
*Attorneys for Defendant,*
*Lancer Insurance Company*
1300 Liberty Building
Buffalo, New York 14202
(716) 849-8900

TO:   ALL COUNSEL VIA ECF