USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 05/04/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAMP 1382 LLC, *d/b/a* CAMPAGNOLA RESTAURANT, *on behalf of itself and all others similarly situated*,

    Plaintiff,

v.

LANCER INSURANCE COMPANY,

    Defendant.

No. 20-CV-3336 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Camp 1382 LLC, doing business as Campagnola Restaurant, filed the instant action on behalf of itself and a proposed class of policyholders against Lancer Insurance Company, alleging that Lancer breached Plaintiff's "all risk" insurance policy (the "Policy") by denying coverage for losses Plaintiff incurred as a result of the COVID-19 pandemic. Defendant has moved to dismiss the complaint, contending that Plaintiff fails to allege "direct physical loss of or physical damage to property," and that the policy's "Virus Exclusion" and "Ordinance Or Law Exclusion" preclude coverage under the circumstances. For the reasons that follow, Defendant's motion is granted.

### BACKGROUND[1]

Plaintiff Camp 1382, a restaurant with its principal place of business in New York, New York, alleges that it suffered losses when it was forced to curtail its operations to comply with government restrictions during the COVID-19 pandemic. Specifically, in March of 2020, then-Governor Andrew Cuomo issued a series of executive orders limiting all restaurants in New York

---

[1] The Court draws the following facts from the complaint and the supporting declarations and exhibits attached to the parties' briefs.

to take-out and delivery orders only and eventually closing all non-essential businesses. Compl. ¶ 29. Plaintiff had purchased an "all risk" commercial business insurance policy through Lancer to cover the period from August 15, 2019 through August 15, 2020, and contends that the losses it suffered as a result of the government mandates are covered by the Policy.

Plaintiff asserts that Lancer breached its obligation to pay for "Business Income," "Extra Expense," and "Civil Authority" coverage based on an argument that Camp 1382 and its neighbors suffered direct physical loss of or damage to their properties when they were unable to use their properties due to the government's closure orders in response to the pandemic. The Policy provides "Business Income" coverage to Plaintiff as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in the vehicle, the described premises include the area within 100 feet of such premises.

*Id.* ¶ 36. "Covered Causes of Loss" is further defined as "direct physical loss unless the loss is excluded or limited in this policy." Vovou Aff. Ex. 1, at 68. Plaintiff's Policy also states that Lancer would pay "Extra Expense" coverage to reduce loss:

> In the event of a covered loss of Business Income, we will pay necessary expenses you incur, except for the cost of extinguishing a fire, to avoid further loss of Business Income. The total of our payment for Business Income Loss and Expenses to Reduce Loss will not be more than the Business Income loss would have been payable under this Coverage Form (after application of any Coinsurance penalty) if the Expenses to Reduce Loss had not been incurred. This coverage does not increase the Limit of Insurance.

Compl. ¶ 37. The Policy additionally provides the following additional "Civil Authority" coverage for Plaintiff:

2

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
> (1)   Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> (2)   The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property. . . .

*Id.* ¶ 38.

Finally, the policy includes two relevant exclusions. The first, the "Virus Exclusion," is an endorsement that explicitly excludes loss due to viruses or bacteria: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id.* ¶ 40. The second, the "Ordinance Or Law Exclusion," excludes coverage for "loss or damage caused directly or indirectly by . . . [t]he enforcement of or compliance with any ordinance or law regulating the construction, use, or repair of any property." Vovou Aff. Ex. 1, at 68.

Plaintiff commenced this lawsuit, asserting claims for breach of contract, as well as for a declaratory judgment that affirms that the pandemic and the response by the civil authorities "triggers coverage, has caused physical property loss and damage to the insured property, provides coverage for future civil authority orders that result in future suspensions or curtailments of business operations, and finds that Defendants are liable for the losses suffered by policyholders." Compl. ¶ 8.

After Defendant moved to dismiss the action and the motion was fully briefed, the Second Circuit issued a decision in *10012 Holdings, Inc. v. Sentinel Insurance Co., Ltd.*, 21 F.4th 216, 221 (2d Cir. 2021), a case directly on point. This Court then ordered the parties to submit supplemental

3

letters addressing the effect of the Circuit's decision on this case.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). In answering this question, the Court must "accept[ ] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

## DISCUSSION

The Second Circuit recently ruled on the issues presented in this case in *10012 Holdings, Inc. v. Sentinel Insurance Co.*, 21 F.4th 216, 221 (2d Cir. 2021). There, the Circuit, applying New York law, held that a policy requiring "direct physical loss" or "physical damage" did not apply to loss of use due to government shutdown orders brought about by the COVID-19 pandemic. In upholding the dismissal of the plaintiff's claim for coverage under its policy's Business Income and Extra Expense provisions, the Court wrote:

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

> We therefore hold, in accord with *Roundabout Theatre* and every New York state court to have decided the issue, that under New York law the terms "direct physical loss" and "physical damage" in the Business Income and Extra Expense provisions do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property. We therefore reject 10012 Holdings's argument that "physical loss" must mean "loss of physical possession and/or direct physical deprivation" — in other words, loss of use.

*Id.* at 222 (citing *Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6–7 (N.Y. App. Div. 2002)).

The Court further held that 10012 Holdings could not recover under the policy's Civil Authority provision:

> [C]overage under the Civil Authority provision . . . is contingent on showing that the civil authority orders—here, the executive orders issued by the Governor—resulted from a risk of direct physical loss to property in the vicinity of the gallery. But the executive orders were the result of the COVID-19 pandemic and the harm it posed to human beings, not, as "risk of direct physical loss" entails, risk of physical damage to property. Shuttering a gallery because of possible human infection does not qualify as a "risk of direct physical loss." Second, even assuming that COVID-19 itself posed a "risk of direct physical loss," coverage under the Civil Authority provision contemplates that the executive orders prohibiting access to the insured's premises were prompted by risk of harm to neighboring premises. As the District Court observed, however, "the Complaint does not plausibly allege that the potential presence of COVID-19 in neighboring properties directly resulted in the closure of Plaintiff's propert[y]; rather, it alleges that closure was the direct result of the risk of COVID-19 at Plaintiff's property.

*Id.* at 223 (quoting *10012 Holdings, Inc. v. Sentinel Ins. Co.*, 507 F. Supp. 3d 482, 488–89 (S.D.N.Y. 2020)).

The relevant policy provisions at issue in *10012 Holdings* and this case are materially identical. As was the case in *10012 Holdings*, Plaintiff seeks coverage for business losses associated with government mandated closures due to the COVID-19 pandemic. Plaintiff's claims similarly rely on the argument that physical loss should be interpreted as loss of use—an argument that is now precluded by *10012 Holdings*. Plaintiff has thus failed to plausibly allege "direct

5

physical loss of or damage to property," which is required to trigger Business Income and Extra Expense coverage under the Policy, or a "risk of direct physical loss," which is required to trigger Civil Authority coverage.[3]

Accordingly, Plaintiff's arguments are precluded by the Second Circuit's decision in *10012 Holdings*. As Plaintiff recognized in its supplemental letter submitted in light of the Circuit's decision, this Court is bound by this precedent. *See Grytsyk v. Morales*, 527 F. Supp. 3d 639, 653 (S.D.N.Y. 2021) ("It is well established that a district court must follow a precedential opinion of the Second Circuit unless and until it is overruled . . . by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit.").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted.

The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 19 and 23 and close this case.

SO ORDERED.

Dated:   May 4, 2022
         New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　Ronnie Abrams
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[3] In light of the fact that Plaintiff's claims are foreclosed by binding Second Circuit precedent, the Court need not address whether the Virus Exclusion or the Ordinance Or Law Exclusion preclude coverage.